O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY BARNES, | Case No. CV 14-00965 DDP (JCGx) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| SONY MUSIC ENTERTAINMENT INC.; RCA MUSIC GROUP; SARAH DENNISON, | [Dkt 18] |
| Defendants. | |

Presently before the court is Defendants Sony Music Entertainment ("Sony") and Sarah Weinstein Dennison ("Weinstein Dennison")'s Motion for Summary Judgment. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

**I. Background**

Plaintiff Courtney Barnes works as a publicist for high-profile music industry clients. (Opposition Ex. A at 18, Ex. B at 39.) In January 2013, Barnes learned of and expressed interest in becoming an independent publicist for Fantasia Barrino ("Fantasia"), separate from or in addition to Fantasia's record company publicist. (Declaration of Peter J. Anderson in Support of

Motion, Ex. 1 at 29-30, 37, 39.)  In February, Barnes was engaged to serve as Fantasia's publicist at a rate of $1,500 per month. (Opp., Ex. C at 16-17.)  Within weeks, however, Fantasia's manager terminated relationship with Fanstasia.  (Declaration of Courtney Barnes ¶ 3.)  Barnes contends that Fantasia's manager attributed the termination to the fact that "a Jewish woman" at Sony's publicity department did not want to work with him.  (Id.)  Barnes further contends that, about a year prior to this incident, another artist's manager informed Barnes that Defendant Weinstein Dennison, a Vice-President of Publicity at Sony, refused to work with him. (Id. ¶ 4; Complaint ¶ 9.)  Barnes brings causes of action against Weinstein-Dennison and Sony for intentional interference with contractual relations and with prospective economic relations.[1] Defendants now move for summary judgment.

**II.  Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from

---

[1] Plaintiff appears to agree that his claims against Sony are dependent upon and derivative of his claims against Defendant Weinstein Dennison.

2

the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir.1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence

3

is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

    A.    Plaintiff's Rule 56(d) Request

    As an initial matter, Plaintiff contends that he needs additional time to gather evidence to oppose Defendants' motion. A court may defer consideration of, or deny, a motion for summary judgment, or extend discovery, if an opposing party demonstrates, by affidavit or declaration, specific reasons why it cannot present facts essential to its opposition. Fed. R. Civ. P. Plaintiff's counsel states that if he were permitted time to take the deposition of Ryan Ramsey, the resulting testimony would establish that Sony's publicity department did not want to work with Plaintiff, and would therefore support the contention that Defendant Weinstein Dennison knew about and interfered with Plaintiff's contract. (Declaration of James Orland ¶ 8.)

    Counsel's declaration does not, however, establish why Mr. Ramsey has not yet been deposed. Plaintiff himself identified Mr. Ramsey in a response to Defendants' interrogatories as early as September 2014. (Reply Declaration of Peter J. Anderson, Ex. 10.) At no point prior to the close of discovery on October 31, 2015 does Plaintiff appear to have noticed Ramsey's deposition or sought an extension of time to do so prior to the instant request. Because Plaintiff was not diligent in his pursuit of Mr. Ramsey's deposition, the Rule 56(d) request is denied. See, e.g., Conkle v. Jeong, 73 F.3d 909, 914 (9th Cir. 1995).

    B.    Intentional Interference Claims

4

A claim for intentional interference with contractual relations requires "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption . . ., and (5) resulting damage." Quelimane Co., Inc. v. Stewart Title Guaranty Co., 19 Cal.4th 26, 55 (1998).[2]

Defendants contend that there is no triable issue with respect to the second and third elements because Defendant Weinstein Dennison did not know Plaintiff and was not aware of any contract he had with Fantasia, and therefore could not have intentionally interfered with any such agreement. Defendant Weinstein Dennison claims that she has never spoken with Plaintiff. (Weinstein Dennison Declaration ¶ 4.) Nor did Defendant Weinstein Dennison know or work with any of Fantasia's representatives. (Id. ¶ 6.) Other evidence is consistent with that representation. Brian Dickens, who worked as Fantasia's personal business manager and terminated Plaintiff's representation of Fantasia, testified that he "[n]ever heard of [Weinstein Dennison] nor would I know her if she was standing beside me." (Anderson Decl., Ex.2 at 10:19-20.)

---

[2] Plaintiff alleges claims for intentional interference with both contractual relations and prospective economic advantage. Plaintiff's opposition does not, however, discuss the claims separately, and all of the arguments raised by Defendants with respect to the contractual relations claim are equally applicable to the prospective advantage claims. A prospective advantage claim requires (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1153.

5

Plaintiff provides no evidence to the contrary. Instead, Plaintiff merely contends that "Plaintiff's employment with Fantasia would have largely consisted of him working alongside of Fantasia's publicist at Defendant SONY. It would be disingenuous of Defendants to suggest that Defendant Weinstein Dennison was not aware of Plaintiff working alongside one of her personnel when she had only recently blackballed Plaintiff." (Opp. at 6.) This circular argument is unsupported by any evidence, and ignores Defendant Weinstein Dennison's statement that she is not and never has been Fantasia's publicist at the record label. (Weinstein Dennison Decl. ¶ 6.) There is, therefore, no genuine dispute as to whether Defendant Weinstein Dennison knew of any contract between Fantasia and Plaintiff.

Nor is there any admissible evidence that, even if Defendant Weinstein Dennison knew of the purported contract, she did anything to interfere with it. To the contrary, Fantasia's own representatives testified that the record label, and therefore Defendant Weinstein Dennison, did not, and could not, have anything to do with their decision not to retain Plaintiff. Sean Larkin, one of Fantasia's business managers, told Brian Dickens that Fantasia could not afford the services of an independent publicist such as Plaintiff.[3] (Declaration of Sean Larkin ¶ 3.) Dickens then made the decision not to retain Plaintiff, and relayed to Plaintiff that Fantasia's financial circumstances necessitated the decision. (Dickens Decl. ¶ 5.) Dickens affirmatively, directly,

---

[3] Although Fantasia did later retain an independent publicist other than Plaintiff, she did so only after being engaged to perform in a Broadway show that brought her additional income. (Larkin Decl. ¶ 5.)

6

and repeatedly refuted Plaintiff's suggestions that the record label was at all involved in the decision. (Id. ¶¶ 5-6).  Indeed, Dickens testified that nobody at the record label had any power to compel him to hire or fire any independently-funded publicist. (Anderson Decl., Ex. 2 at 19:22-25.)

Although Plaintiff does refer to some evidence that might tend to establish Defendant Weinstein Dennison's interference, it consists entirely of hearsay.  Plaintiff's own declaration states that Dickens told Plaintiff he was being terminated because there was "a Jewish woman" at the record label's publicity department who did not want to work with Plaintiff.  (Barnes Decl. ¶ 3.)  That evidence is not only hearsay, and flatly contradicted by Dickens himself, but also fails to identify Defendant Weinstein Dennison as the "Jewish woman" in question.  Plaintiff also references a hearsay statement made by Ryan Ramsey, the manager of a former client, Brandy, about "a problem" between Plaintiff Weinstein Dennison and Plaintiff that led the former to refuse to work with the latter.  (Id. ¶ 4.)  As discussed above, however, Plaintiff has not deposed Ramsey and did not diligently attempt to do so. Lastly, Plaintiff refers to the hearsay testimony of Brandy's mother, Sonja Norwood, who testified about statements made to her by Ryan Ramsey, not by Defendant Weinstein Dennison or anyone at Sony.  (Opp. Ex. C at 19.)  The only admissible evidence in the record establishes that Fantasia's business managers made a financial decision not to retain Plaintiff, and that neither Defendant Weinstein Dennison nor anyone else at the record label had anything to do with Plaintiff's termination.

1       Lastly, Defendants argue that Plaintiff has also failed to
2  demonstrate the damages element of his intentional interference
3  claims.  Defendants contend, and Plaintiff does not dispute, that
4  Plaintiff never met his obligation under Federal Rule of Civil
5  Procedure 26(a)(1)(iii) to provide a computation of each category
6  of damages claimed and the evidentiary basis for those
7  computations.  Although Plaintiff now appears to point to testimony
8  regarding his usual rate, the rate common in the field, and the
9  rate Fantasia's later-hired independent publicist received after
10 Fantasia was engaged to perform on Broadway, under Rule 37,
11 Plaintiff may not now make use of any information that should have
12 been provided as part of his initial Rule 26 disclosures.  Fed. R.
13 Civ. P. 37(c)(1).
14      Rather than address his failure to comply with Rule 26
15 directly, Plaintiff argues that due to the culture of the recording
16 industry, he cannot reveal the identities of his clients without
17 breaching his duties to those clients and inviting retaliation and
18 further damages.  While the import of this assertion to Plaintiff's
19 damages claims is not entirely clear to the court, it does not
20 excuse Plaintiff's failure to comply with Rule 26 nor create a
21 triable issue of material fact regarding Plaintiff's damages.  The
22 court further notes that it does not appear that Plaintiff has ever
23 sought a protective order or leave  to file any document under
24 seal.  Absent any admissible evidence of damages, Plaintiff's
25 claims for intentional interference must fail.

**IV. Conclusion**

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

Dated: April 6, 2016

DEAN D. PREGERSON
United States District Judge